## First Mortgage Co. of Pa. v. Carbone

*Richard F. Stern,* for plaintiff.
*Randolph T. Borden,* for defendants.

WILLIAMS, *P.J.,* October 21, 1977—

### FINDINGS OF FACT

1. Plaintiff loaned the Port Office Equipment Company, on February 13, 1976, the sum of $20,000.

2. At the time of the loan defendants were President and Secretary of the borrowing corporation.

3. A condition of the loan was that it be personally guaranteed by defendants.

4. Defendants executed a bond in favor of plaintiff, secured by a mortgage on their residence. The bond was given in the sum of $38,220, payable in 84 successive monthly payments beginning March 5, 1976, with interest only after maturity at one and one-half percent per annum.

5. Defendants paid a total of $2,870 on account of their obligation, but have defaulted and presently are in default on the aforesaid obligation.

6. The bond provides for an attorney's fee of fifteen percent for collection, in the event judgment is obtained on the bond and execution is issued thereon.

7. The bond further provides: "Obligor has no right of prepayment or diminution of interest for the first two years (2) being twenty-four (24) consecutive monthly payments hereunder having been timely made."

8. On January 8, 1976, plaintiff handed to defendants a commitment letter which contained the following language:

"It is understood and agreed by the parties hereto that, while the within loan transaction will be consummated in accordance with all the provisions of the 1968 Consumer Trade Production Act, commonly known as the 'Truth in Lending Act', in that it is a loan to a corporation the aforesaid loan transaction will be consummated in accordance with all the provisions of the aforesaid 'Truth in Lending Act', and that prior to settlement, lender will supply to borrower a loan disclosure statement duly completed, which will be executed by the borrower if same is acceptable."

The borrowers executed the letter.

9. A loan disclosure statement was issued which states inter alia:

"The annual percentage rate is 22% or less." The actual annual percentage rate is 20.80 per cent.

10. While the bond provides for a default charge of five per cent, the complaint fails to allege either the failure to pay such charge or allege the right of plaintiff to recover it.

11. The loan disclosure statement shows that the credit extended was $38,220, which includes prepaid interest of $18,220.

12. Plaintiff brought an action of assumpsit in which it seeks to recover the following.

| "Balance due | $35,350.00 |
| Interest to date | 2,121.00 |
| Attorney Fees | 5,302.50 |
| | $42,773.50" |

13. The proceeds of the loan were used exclusively for the use of the corporation. A portion was used to satisfy a judgment against the corporation and the balance for working capital.

14. Defendants never rescinded the loan transaction or tendered to plaintiff an offer to return to plaintiff the sum of $20,000.

## ISSUES

Defendants contend (a) that the bond and warrant is void because the loan terms do not conform to the Consumer Protection Act. Plaintiff contends that the loan is exempt from the provisions of that act, that the terms are not in violation of the act and if so, such violation does not render the bond and warrant void. (b) Defendants contend that the bond and warrant is void because its terms violate the Act of January 30, 1974, P. L. 13, 41 P. S. §§405 and 406.

Section 405 provides:

"Residential mortgage obligations contracted for on or after the effective date of this act may be prepaid without any penalty or other charge for such prepayment at any time before the end of the period of the loan."

Plaintiff contends that no residential loan was involved in the loan transaction and even it were, a violation of section 405 would not void the bond and defendants were not injured because they never offered to prepay the loan. It is further contended that a violation of section 405 would not void the bond and warrant.

Section 406 provides:

"With regard to residential mortgages, no residential mortgage lender shall contract for or receive an attorney's fee from a residential mortgage debtor except as follows:

"(1) Reasonable fees for services included in actual settlement costs.

"(2) Upon commencement of foreclosure or other legal action with respect to a residential mortgage, attorney's fees which are reasonable and actually incurred by the residential mortgage lender may be charged to the residential mortgage debtor.

"(3) Prior to commencement of foreclosure or other legal action attorney's fees which are reasonable and actually incurred not in excess of fifty dollars ($50) provided that no attorneys' fees may be charged for legal expenses incurred prior to or during the thirty-day notice period provided in section 403 of this act."

Defendants allege that the attorney fee sought by plaintiffs ($5,302.50 by virtue of the provision in the bond and warrant which authorizes an

attorney's fee of fifteen percent) violates section 406, and because of that the bond and warrant is void.

Defendant contends both that section 406 is not applicable because no residential mortgage is involved in the transaction and that it is entitled to a reasonable attorney's fee to be fixed by the court.

## ARE THE TERMS OF THE CONSUMER PROTECTION ACT APPLICABLE TO THE LOAN TRANSACTION?

Since the loan transaction was with a corporation, ordinarily the transaction would be exempt from the Consumer Protection Act. Here, however, plaintiff submitted a written commitment to defendants in which it expressly stated that while the loan is exempt from the terms of the commonly called Truth in Lending Act in that it is a loan to a corporation "the aforesaid loan transaction will be consummated in accordance with the provisions of the aforesaid 'Truth in Lending Act.' " This language in our opinion incorporated the terms of that act into the conditions of the loan as fully as if the terms of the act had been set forth verbatim in the commitment and obligated plaintiff to conform to the terms of the act.

Defendants assert that plaintiff did not specifically state the annual interest percentage in the disclosure statement. The rate fixed is 22 percent or less. It was in fact 20.80 percent. There is no factual misstatement of the annual percentage interest rate. It is true that the rate is not specifically stated but defendants' remedy under the statute was to rescind the transaction by midnight of the third business day following the date of the

consummation of that transaction or the delivery of the disclosure and all other material disclosure required under this part, whichever is later: 15 U.S.C. A. § 1635, May 29, 1968, 82 Stat. 152.

Here, defendants have not rescinded the loan transaction. They admit they waived that right. While defendants assert they did rescind, there is no evidence to support it. There is no proof that a notice of rescission was given to plaintiff or a tender of the $20,000 received by defendants as required by 15 U.S.C.A. §1636 was made by defendants to plaintiff.

## DO THE TERMS OF THE BOND AND WARRANT VIOLATE 41 P.S. §405?

Since section 405 applies to residential mortgage loans, it is necessary to determine if the loan transaction here considered was a residential mortgage loan.

Pennsylvania Code, Title 10, §7.2 defines a residential mortgage in this manner:

"(1) Residential Mortgage — For purposes of the permissible interest rate and disclosure requirements under the act, shall be deemed not to include any transaction where: (A) no purpose of the transaction is to assist in the purchase, improvement, or repair of real property containing two or fewer residential units . . ."

Here the loan was to a corporation. Defendants are guarantors of the loan. The proceeds were used exclusively for the benefit of the corporation. We find no basis to conclude that any residential mortgage was involved. No residential mortgage being involved, it follows there was no violation of section 405.

## DID THE PROVISION OF THE BOND AND WARRANT VIOLATE SECTION 406?

Since section 406 applies to residential mortgages, our finding that the loan transaction was not a residential mortgage precludes a finding that the bond and warrant violated section 406.

## ATTORNEY FEES

In its complaint, plaintiff seeks to recover attorney fees in the amount of $5,302.50. This is based on fifteen percent of the amount alleged to be due on the bond and warrant and is in accordance with the terms of the bond and warrant. In L. & N. Sales Company v. Stuski, 188 Pa. Superior Ct. 117, 146 A.2d 154 (1958), it was alleged that the stipulated commission was excessive, oppressive and unconscionable. Judge Watson (now President Judge Watson) pointed out that "[t]he collection fee stipulated in a judgment note is subject to the equitable control of the court, and it is within the court's discretion whether to reduce the fee or not." We readily agree that to allow an attorney's fee of $5,302.50 would be a gross abuse of that discretion. We have examined the record to learn the extent of time required by plaintiff's counsel to properly represent plaintiff. The issues before us are largely legal in character and the non-jury trial was of short duration, less than two hours. Preparation of pleadings required time and the trial brief presented by plaintiff's counsel showed that it was carefully prepared and required considerable research. Plaintiff's counsel at trial sought a reasonable attorney's fee, but stated no amount. We believe that it would be reasonable to reduce the fifteen percent stipulated in the bond to the sum of $1,800.

## MEASURE OF DAMAGES

In its complaint, plaintiff seeks to recover the balance claimed to be due of $35,350; interest to date $2,121 and attorney fees of $5,302.50 or a total of $42,773.50.

Since the face of the obligation sued upon included unearned capitalized interest, the trial judge requested memorandums of law, as to whether plaintiff could recover unearned interest. Plaintiff, while maintaining its right to do so, expressed a willingness to obtain judgment in a reduced amount of $31,389.30 with reasonable counsel fees, based upon a payment under one-half the rule of 78's. This amount would be the pay-off sum in the event the loan was prepaid. Defendant argues to permit such recovery of capitalized interest would be unconscionable.

In plaintiff's loan approval letter, dated January 28, 1976, there appears this language: "The borrower shall have no right of prepayment or diminution of interest for the first two years, being twenty-four (24) consecutive monthly payments. Anytime thereafter borrower may prepay the loan within ninety (90) days written notice to lender and lender will rebate the unearned interest on the account under one-half (½) the rule of 78's method."

Thus, plaintiff has offered to accept the sum provided by the loan arrangement in the event defendants had voluntarily prepaid the loan. To place defendants who have admittedly defaulted in their contractual obligation in the same position they were entitled to be if they had not defaulted, does not appear to us to be unconscionable but eminently fair.

## DECISION

And now, October 21, 1977, we find in favor of plaintiff and against defendants as follows:

Balance due on
contractual obligation $31,389.30
Counsel Fees 1,800.00

Total $33,189.30

If no exceptions are filed within ten days after notice to defendants of the filing of this decision, the prothonotary shall enter judgment for plaintiff and against defendants in the above entitled amount.